{¶ 16} While I reluctantly agree with the ultimate decision in this case, I write separately because I disagree with the court's discussion regarding the interplay between state and federal law concerning special needs trusts.
 {¶ 17} The majority states that it is unaware of any state statutes governing or otherwise referencing "special needs trusts" and that the law of Ohio references only "supplemental needs trusts,"[4]
the latter of which the majority claims are created by another person for the benefit of the disabled person.[5] I believe this is incorrect. Used almost interchangeably, a "special needs trust" is defined by Ohio Adm. Code 5101:1-39-271(C)(7)(a) and that definition essentially parallels the definition contained in 42 U.S.C. § 1396p(d)(4)(A). The distinction, in my mind, is not the label given to the trust but the purposes of the trust and its source of funding.
 {¶ 18} A trust established for the supplemental or special needs of a disabled person, needs that are above and beyond those services provided for under a government-supported assistance program, is just that: a "special needs" or "supplemental needs or services" trust. It appears that one is no different than the other in purpose. The source of funding, however, calls into play different governing rules.
 {¶ 19} Under 42 U.S.C. § 1396p(d)(4), the trust is funded with the assets of a disabled individual under the age of 65 and is established by a parent, grandparent or legal guardian of the disabled individual. R.C. 1339.51, on the other hand, makes no reference to the source of funds only that "any person may create a trust under this section to provide funding for supplemental services" for the benefit of a disabled individual. Although I am sure appellant's counsel will correct me if I am wrong, it would appear that a guardian could as similarly establish a trust under R.C. 1339.51 as it could under42 U.S.C. § 1396p(d)(4). The converse, however, is not necessarily true. An individual, other than a parent, grandparent or legal guardian, wishing to establish a trust with their own assets for the benefit of a disabled person could not establish such a trust under42 U.S.C. § 1396p(d)(4). Be that as it may, certain restrictions contained in R.C. 1339.51 may make the establishment of a trust by a guardian more attractive under 42 U.S.C. § 1396p(d)(4) rather than under the state statute. Notwithstanding the above distinction, the establishment of the trust in this case is not at issue. Consequently, any discussion relative to the types of trusts available for the benefit of disabled persons or the validity of the trust already established, or its revocability for that matter, is unnecessary to this court's resolution of the issue before it; namely, whether the probate court erred when it denied the guardian's motion to amend the trust agreement.
 {¶ 20} As so narrowed, I cannot find that the probate court erred in denying the guardian's motion to amend. R.C. 2111.50(B) prohibits a guardian from making a will for the ward. The prohibition stems from the inability of a guardian to make a testamentary disposition of the ward's property or otherwise alter a property disposition already made by the ward while competent. The effect of the trust amendment as proposed would do just that. By naming specific individuals, despite mirroring the laws of descent and distribution, the guardian is making a testamentary disposition expressly forbidden by R.C. 2111.50(B). It is true that a trust established under either statute must contain a payback provision for a government assistance provided and, as such, effectively makes a testamentary disposition with regards to those assets. Nonetheless, this specific statutory provision overrides the general provision precluding such a disposition. There is no similar specific provision as to the residuary of such a trust's assets.
 {¶ 21} I am not unsympathetic to appellant's dilemma. If there was any way in which a contrary result could have been reached, I would have supported it wholeheartedly. Certainly the federal statute under which this trust was created, and approved by the probate court, authorizes this type of trust. It appears, however, that federal and state laws governing such trusts need to be updated to coincide with the purpose of42 U.S.C. § 1396p(d)(4).[6] This includes laws affecting federal and state assistance programs as well as laws affecting guardianships. Because I am bound to follow the law as it now exists, I cannot say that the probate court erred when it denied the guardian's motion to amend the trust agreement under the facts and circumstances in this case.
 {¶ 22} As correctly stated by the majority, it appears that other courts reviewing an SSA decision to terminate benefits when faced with an estate as a residual beneficiary of a special needs trust have found such a decision to be in error. Quinchett v. Massanari (S.D.Ohio 2001),185 F. Supp.2d 845; Lanoue v. Commr., Social Security Adm. (2001),146 N.H. 504, 774 A.2d 1236. That issue, however, is not our issue to decide. However tempting, we are not the arbiter of the disabled person's Medicaid eligibility and have no authority to render any opinion on that issue.
 {¶ 23} I reluctantly, therefore, concur in judgment only.
[4] Also referenced as "supplemental services trusts." See, e.g., Ohio Adm. Code 5101:1-39-271, 5122-22-01 and 5123:2-18-01.
[5] Actually, R.C. 1309.406 and 1309.408 also reference "special needs trusts" created under 42 U.S.C. § 1396p(d)(4) as they pertain to provisions in Ohio's codification of the Uniform Commercial Code, R.C. Chapter 1309.
[6] While the majority's statement to the effect that it perceives no "conflict between R.C. 2111.50 and the law and the laws governing special needs trusts" may be technically correct, there certainly appears to be a conflict between these two statutes and the laws governing SSI eligibility.