Carroll County Probate Court
No. 2004-200

JANET KING

v.

PAUL S. ONTHANK, JR.

Argued: December 9, 2004
Opinion Issued: March 18, 2005

*Ingersoll Professional Assoc.*, of Concord (*Douglas L. Ingersoll* on the brief and orally), for the petitioner.

*Cooper, Deans & Cargill, P.A.*, of North Conway (*Randall F. Cooper* and *Claudine C. Safar* on the brief, and *Mr. Cooper* orally), for the respondent.

GALWAY, J. The respondent, Paul S. Onthank, Jr. (Onthank), appeals from orders of the Carroll County Probate Court (*Patten,* J.) issued during the settlement of the estate of his mother, Lillian F. Onthank. We affirm.

Lillian F. Onthank executed her last will and testament on October 13, 1994. She died on November 26, 2000. In her will, she appointed her daughter, Janet King, who is the petitioner, and Onthank as co-executors of her estate. She also left them her personal property "in substantially

equal shares." Her estate plan called for the funding of the Lillian F. Onthank Family Trust (Family Trust), to be administered by King and Onthank as co-trustees. The funding of the Family Trust was to come from her estate and two inter vivos trusts, one of which was a personal residence trust containing a lakefront property known as Kona.

Disagreements between King and Onthank caused difficulty in closing the probate estate and distributing the assets. In January 2003, King filed a petition in the probate court seeking, among other things, a decree of distribution of the Family Trust assets and a ruling that the property should be valued as of the date of distribution.

Based upon the parties' pleadings, estate planning documents, and supporting memoranda of law, the court ruled: "[T]he proper asset valuation date for assets distributed through the provisions of the Lillian F. Onthank Family Trust is properly at a date near or on the date of distribution from said trust to the beneficiaries . . . ." After a further hearing, the court ruled that the valuation date would be April 1, 2003. The court found that the settlor intended to provide an equal benefit to the parties, which was clearly demonstrated by numerous provisions in the various trust and testamentary documents, and that this decision carried out the settlor's underlying intent.

Following a hearing on the issue of equalizing the distribution of the trust assets, the court adopted the parties' agreement that the fair market value of Kona on April 1, 2003, was $950,000. At the hearing, Onthank raised, for the first time, claims for a real estate broker's commission and capital gains tax, as if the property had been sold; miscellaneous out-of-pocket expenses; and caretaker services since his mother's death. The court found these claims to be unsupported.

*I. Valuation Date*

We will uphold findings of fact of the judge of probate unless "they are so plainly erroneous that such findings could not be reasonably made." RSA 567-A:4 (1997); *In re Estate of Hollett*, 150 N.H. 39, 42 (2003) (quotation omitted). We review questions of law de novo. *Hollett*, 150 N.H. at 42.

On appeal, Onthank challenges the probate court's date of valuation of the assets to be distributed through the Family Trust. He contends that the proper valuation date is the date of the testator's death in November 2000, rather than the date of the distribution in April 2003.

 It is well settled that the testator's intent is the sovereign guide in the interpretation of a will, and, this intent being ascertained, the court must enforce it unless it is illegal or impossible to do so. *In the Matter of Shirley Estate*, 117 N.H. 922, 923 (1977). Similarly, it is the settlor's intent, as ascertained from the language of the entire instrument, that governs the distribution of assets under a trust. *See Bartlett v. Dumaine*, 128 N.H. 497, 504 (1986); *see also Lanoue v. Comm'r, Soc. Security Admin.*, 146 N.H. 504, 507 (2001). The settlor's intent also governs the probate court's choice of the valuation date of assets used to satisfy a testamentary bequest in trust. *See Bartlett*, 128 N.H. at 504; *see also In re Estate of Naulin*, 201 N.W. 2d 599, 602 (Wis. 1972). The settlor's intent is a question of fact to be determined by competent evidence and not by rules of law. *Bartlett*, 128 N.H. at 505; *Lanoue*, 146 N.H. at 507.

The First Amendment to the Family Trust states, in pertinent part:

> If, upon the death of the Grantor, the fixed term set in the Lillian F. Onthank Personal Residence Trust and the Lillian F. Onthank Annuity Trust shall not have expired, the Trustees shall divide the Trust Estate in two parts. The first half of the estate shall be distributed free of trust to the Grantor's child Janet F. King, per stirpes. The second half of the estate shall be held in trust and the Trustee shall ... pay the net income to the Grantor's child, Paul S. Onthank, Jr. . . . . . In allocating the assets of the Grantor's estate, it is the Grantor's desire that the property known as Kona be placed if possible in the share which devolves to Paul S. Onthank, Jr. and his issue.

Onthank argues that the plain language of the Family Trust provides for the date of death as the date for the distribution of assets. To support his contention, he specifically looks to the "upon the death of the Grantor" language in connection with "the Trustees shall divide" language. Thus, he contends that the trustees had a duty to distribute the property upon the termination of the inter vivos trusts (*i.e.*, the date of death).

Although the settlor did not specify a date of valuation, we conclude that the language used in the will and trusts supports the trial court's findings that the equitable date for valuation was approximately the date of distribution of the trust assets. *See In the Matter of Shirley Estate*, 117 N.H. at 923; *see also Bartlett*, 128 N.H. at 504. *See generally* RESTATEMENT (SECOND) OF TRUSTS § 347 comment *b* at 200, comment *c* at 200, comment *e* at 201, comment *h* at 203. First, the testator mandated that her children share equally in the benefits of her estate. Her will

required that they divide tangible property in "substantially equal shares," with the residuary estate going to fund the Family Trust. Pursuant to the Family Trust documents, the children were appointed as co-trustees, and were to divide the trust estate into halves.

Second, the settlor clearly expressed her intent that Onthank's half include Kona "if possible." The "if possible" language here is precatory; it expresses a desire, not a mandate. *See* RESTATEMENT (SECOND) OF TRUSTS § 347 comment *c* at 200, comment *e* at 201. Because special advantages accrue to specific devisees, courts are not inclined to construe a devise as specific unless it is clearly so intended. *See Wallace v. Wallace,* 23 N.H. 149, 153 (1851). *See generally* 10 C. DEGRANDPRE & W. TREAT, NEW HAMPSHIRE PRACTICE, PROBATE LAW AND PROCEDURE § 37-4, at 434 (2001). Here, we do not construe Kona to be a specific devise. Accordingly, Kona would be distributed to Onthank by the direction of the trustees pursuant to the precatory language only if it did not adversely affect King's equal share.

Onthank maintains that prior to the court's involvement in choosing a valuation date, he attempted to have King "commit to resolving the distribution of assets." He argues that it was a "breach of [King's] duty to the beneficiaries" not to "cooperate" in the distribution of the estate, and that her actions went "beyond all bounds of reasonableness," and therefore, the distribution was unreasonably delayed. His argument ignores, however, that since both parties were to receive one half of the assets of the trust, the value of all of the assets had to be agreed upon or determined prior to distribution.

Although the parties' lengthy negotiations failed due to disagreements on asset values, the probate court did not find that King acted unreasonably or breached any duty, and the record before us does not compel the making of any such findings. The probate court's stated "paramount consideration" was the settlor's intent to equally benefit her children.

■ The appellant has not demonstrated that the court's finding regarding the settlor's intent is so plainly erroneous that it could not have reasonably been made. *See* RSA 567-A:4. As the court stated, its determination regarding the date of valuation was consistent with the clear expression of the settlor's intent to distribute the property equally, and to include Kona in Onthank's share only if that inclusion was possible without adversely affecting King's equal beneficial interest. This determination could not be made until the values of the assets to be

distributed were agreed to or determined. We hold, under the facts of this case, that the court did not err in establishing the date of distribution as the date of valuation.

*II. Equalization Amount*

Onthank next argues that the court erred in establishing what he owed King as an equalization amount. He contends that "[King] was specifically benefited by one-half of the appreciated value of the real estate, while the Family Trust was burdened by the costs associated with the real estate commissions, and the capital gain tax liability caused by that appreciation, and other out-of-pocket expenses and [caretaking] services provided by [Onthank]." He argues, therefore, that the court should have reduced the equalization amount by $49,267.50, or one-half the sum of deductions that would have been paid in real estate commissions or auctioneer's fees, and capital gains tax liability that would have been assessed had Kona been sold.

We conclude, however, that Onthank's argument overlooks a crucial fact—there were no real estate commissions, auctioneer's fees, or capital gains taxes paid, and thus the Family Trust was not burdened with such. The record supports the probate court's finding that the amounts are purely speculative and lacking in factual basis. Moreover, Onthank presented no evidence to support his claimed additional out-of-pocket or caretaking expenses, and he had rent-free access to the property since his mother's death; whereas King did not. For these reasons, we conclude that it was not an error of law for the probate court to deny Onthank's request to reduce the equalization amount.

*Affirmed.*

BRODERICK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.